UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| KHALFANI AJAMU | : | |
| --- | --- | --- |
| Petitioner | : | |
| | : | CIVIL ACTION NO.: |
| v. | : | 3:06-cv-1046 (JCH) |
| | : | |
| UNITED STATES | : | |
| Respondent | : | OCTOBER 19, 2007 |

**RULING RE: AMENDED MOTION TO VACATE SENTENCE (Doc. Nos. 1, 16)**

Khalfani Ajamu, a federal prisoner, is currently serving a 120 month sentence following his plea of guilty to one count of conspiracy to possess 50 grams or more of cocaine base with intent to distribute. See 21 U.S.C. §§ 841(b)(1)(A)(iii), 846. Ajamu has moved this court to vacate his sentence pursuant to 28 U.S.C. § 2255, and he alleges that his trial counsel provided him with constitutionally ineffective assistance. Because counsel's performance was objectively reasonable, the court **DENIES** Ajamu's motion.

**I. BACKGROUND**

On April 11, 2005, Ajamu entered his guilty plea before Magistrate Judge Fitzsimmons. This was done pursuant to a plea agreement with the government in which both sides stipulated that the appropriate guideline range would be 108 to 135 months' imprisonment, subject to a statutory mandatory minimum of 120 months. The agreement also included a waiver of Ajamu's appeal rights if the sentence imposed was less than 135 months.[1] Ajamu's plea agreement did not contain any waiver of his right

---

[1] During the plea colloquy, Ajamu acknowledged that he understood that he was waiving his appeal rights. 4/11/05 Tr. at 25.

1

to bring a collateral attack.

The court subsequently sentenced Ajamu on July 8, 2005, to the mandatory minimum sentence of 120 months' imprisonment. No direct appeal was taken. During plea negotiations, entry of the plea, and sentencing, Ajamu was represented by Attorney Michael Sheehan.

Because Ajamu pled guilty to an offense involving crack (i.e. cocaine base), he was subject to harsher penalties than if he had possessed an identical amount of cocaine. This disparity is reflected both in the relevant sentencing guideline, see U.S.S.G. § 2D1.1, and in the relevant mandatory minimum, see 18 U.S.C. § 841(b)(1)(A). This disparity is controversial, and it has been the subject of an ongoing dialogue between the Sentencing Commission and Congress. See generally United States v. Castillo, 460 F.3d 337, 344-50 (2d Cir. 2006) (describing the efforts at reform over the last 20 years).

Although Congress has not yet embraced reform, there is always the possibility that it could do so at some point in the future. Prognosticators will surely differ on the chances of such action, but during the Change of Plea Hearing, Attorney Sheehan, an experienced federal defense attorney, revealed in open court that he thought the probability was quite low. Indeed, as part of an attempt to preserve a claim for Ajamu in the event that such action took place between acceptance of the plea and sentencing, Attorney Sheehan stated: "this may be a plight of pure fancy, but in the event that . . . Congress were ever to acquire any degree of wisdom, a matter of which I have more than considerable doubt, and were to amend [the crack/cocaine disparity] . . . I would be asking [the court] to sentence Mr. Ajamu to something below the ten-year amount."

4/11/05 Tr. at 27-28.  This comment was made before Ajamu entered his guilty plea.

On July 6, 2006, Ajamu filed a pro se Motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  Doc. No. 1.  Ajamu claimed that Attorney Sheehan had provided ineffective assistance because, directly after the imposition of his sentence, Ajamu had "instructed trial counsel to file a direct appeal.  Trial counsel acknowledged [Ajamu's] directions, [but] never followed up on such directions."  Ajamu's First Mem. in Support at 3.

Counsel was subsequently appointed for Ajamu to pursue his Motion, and on May 4, 2007, Ajamu asked this court for leave to file an Amended Motion, [Doc. No. 16], which the court granted.  [Doc. No. 17].  In the Amended Motion, Ajamu offered an entirely different reason for trial counsel's alleged ineffectiveness.  Ajamu asserted that, when he agreed to waive his right to appeal as part of his plea, he did so only because counsel had represented to him that there were "other ways" to attack his conviction or sentence.  Amended Motion at 6.  Ajamu further contended that his trial counsel "did not fully explain these alternative methods," id., and that as a result his appeal waiver was not knowing and voluntary.  Id.

Ajamu's Amended Motion did not repeat his previous assertion that counsel had failed to file a requested direct appeal.  Ajamu has since admitted that this assertion was false.[2]  9/7/07 Hearing Tr. at 32.

On September 7, 2007, the court held an evidentiary hearing on Ajamu's

---

[2] According to Ajamu, a "jail house lawyer" prepared his original Motion in exchange for $200.  9/7/07 Hearing Tr. at 36.  When asked why he signed the Motion, notwithstanding the fact that it contained untrue statements, Ajamu explained that, "I was just trying to challenge my case.  My conviction."  Id.

Amended Motion.  At the hearing, Ajamu explained that, prior to pleading guilty, he and Attorney Sheehan had discussed the possibility that Congress might reduce the crack/cocaine sentencing disparity.  Id. at 14.  Ajamu was concerned that because the plea agreement contained an appeal waiver, he might not be able to benefit from such a change.  Id.  According to Ajamu, Attorney Sheehan represented to him "that if Congress changed the law, there might be a way" for him to get his sentence changed, notwithstanding his appeal waiver.[3]  Id. at 23 (emphasis added).  Ajamu also testified that, if he had not believed that he retained this alternative method, he would not have signed the plea agreement.  Id. at 17.

Attorney Sheehan's recollection did not differ very much from that of Ajamu.  As Attorney Sheehan recounted the relevant discussions with his client, "I phrased it that [Ajamu's] only hope of raising that claim would be if Congress were to change the hundred to one [ratio] and at least make it possible that . . . [the change] would be claimed retroactively. . . . I think I discussed with him that . . . occasionally changes in the guideline[s] had been applied retroactively."  Id. at 64.

## II.   DISCUSSION

An ineffective assistance of counsel claim is cognizable even when a defendant

---

[3] Ajamu's testimony was inconsistent on the extent to which Attorney Sheehan "hedged" his advice.  At several points, Ajamu agreed that Attorney Sheehan had only said that Ajamu might be able to challenge his sentence if Congress changed the disparity.  See 9/7/07 Hearing Tr. at 23; id. at 26; id. at 32.  At other points, however, Ajamu suggested that Attorney Sheehan did not hedge his advice.  See id. at 15, 17.  To the extent that Ajamu's testimony is inconsistent, the court credits the testimony that Attorney Sheehan did hedge his advice, as this testimony is consistent with Attorney Sheehan's recollection (which the court credits).  Additionally, in light of Ajamu's admission that he lied in his original Motion, the court finds Ajamu's discussion of his interaction with counsel to be less than fully credible.

4

pleads guilty.  See Hill v. Lockhart, 474 U.S. 52, 58 (1985).  Courts are to apply the familiar test of Strickland v. Washington, 466 U.S. 668 (1984), modified for the plea context.  Accordingly, for Ajamu to succeed on his Amended Motion, he must first show that counsel's performance fell below an objective standard of reasonableness.  See Hill, 474 U.S. at 57.  If it did, Ajamu must next demonstrate that this poor performance affected the outcome of the plea process.  Id. at 58.

To establish that Attorney Sheehan's performance was deficient, Ajamu argues that his attorney failed to adequately explain the limited nature of his ability to challenge the crack-cocaine disparity through methods other than a direct appeal.  Ajamu's Post-Hearing Br. at 3.  In light of this, Ajamu contends that his attorney failed to ensure that his guilty plea was knowing and voluntary.  See id. at 5.

Ajamu's argument fails.  This is not a case where counsel affirmatively misrepresented the state of the law to his client.  Cf. United States v. Couto, 311 F.3d 179, 187-88 (2d Cir. 2002) (finding that misrepresentations about the consequences of a guilty plea can constitute ineffective assistance).  Instead, Attorney Sheehan was entirely correct in informing Ajamu that he might have a chance to challenge his sentence if Congress revised the crack/cocaine disparity.  After all, Congress can make retroactive changes to the criminal laws (when these changes favor defendants), and Congress has exercised this power on occasion.  See Braxton v. United States, 500 U.S. 344, 348 (1991) (noting that Congress has delegated to the Sentencing Commission the ability to make guideline changes retroactive when these changes benefit defendants); 18 U.S.C. § 3582(c)(2) (allowing defendants to file motions to lower their sentences based on retroactive changes to the guidelines).  And if Congress

did retroactively modify the crack/cocaine disparity, Ajamu's ability to benefit from this would almost certainly be independent of his waiver of appeal rights. Indeed, Ajamu might well be able to file a motion under 18 U.S.C. § 3582(c)(1)(B), which gives the court the authority to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." Ajamu could also attempt a collateral attack under 28 U.S.C. § 2255.

It may be the case, as Ajamu contends, that he did not fully understand the procedural mechanics of how he would challenge his sentence in the event that Congress did correct the crack/cocaine disparity. That is not surprising; given that Congress has not yet made such a change, it is not clear that even Congress knows exactly how such a procedure would work. In any event, Ajamu's own testimony established that he understood the essential points. First, Ajamu understood that his only hope of modifying his sentence would be if Congress acted to address the disparity, and that even then it only <u>might</u> be the case that Ajamu could claim the benefit of a retroactive change. Second, Ajamu was <u>correct</u> in his understanding that his appeal waiver did not prevent him from potentially challenging his sentence in the event of Congressional action.[4]

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Strickland</u>, 466 U.S. at 690. On the facts

---

[4] Moreover, in light of his attorney's comments at the Change of Plea hearing, Ajamu was certainly on notice (if he was not beforehand) that his attorney believed there was a slim likelihood of favorable congressional action in this area.

of this case, Attorney Sheehan's advice to Ajamu surely did not fall below an objective standard of reasonableness. Indeed, it appears to the court that the advice was entirely accurate, and that Ajamu understood the essential points that Attorney Sheehan was conveying to him. Ajamu's Motion is therefore **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 19th of October, 2007.

                                            /s/ Janet C. Hall
                                            Janet C. Hall
                                            United States District Judge